PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THEODORE W. SMITH, III, ) | |
| ) | CASE NO. 4:18cv1493 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| OHIO DEP'T OF REHABILITATION ) | |
| AND CORRECTION, *et al.*, ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | |

*Pro se* Plaintiff Theodore W. Smith, III filed this action *in forma pauperis* under 42 U.S.C. § 1983 against the Ohio Department of Rehabilitation and Correction ("ODRC"), the Ohio State Penitentiary ("OSP") Deputy Warden of Special Operations Bebee, OSP Institutional Inspector Wolfe, Food Service Supervisor John/Jane Doe, OSP Corrections Officers John/Jane Does 1-7, Officer Doe, Lt Doe, OSP Nurse Does 1 and 2, OSP Doctor John Doe, St. Elizabeth Hospital, St. Elizabeth Hospital Nurses John/Jane Does 1 and 2, St. Elizabeth Doctors John/Jane Doe 1-7.

For the reasons given below, and pursuant to 28 U.S.C. § 1915(e), certain claims and parties are dismissed. Of the remaining Defendants (all of whom are unnamed), Plaintiff is ordered to identify at least one no later than 30 days from the date of this Order, or the case will be dismissed without prejudice at that time.

**I. Background**

Plaintiff alleges he was transferred to OSP on November 1, 2017. ECF No. 4 at PageID#:

(4:18cv1493)

32. He states he weighed 200 pounds at his intake medical examination. *Id.* at PageID#: 33. Plaintiff alleges he noticed immediately that OSP did not utilize the ODRC food tray delivery system. *Id.* He claims the portions were smaller than that which he was receiving at a prior institution. *Id.* He indicates he began to suffer from dizziness, weakness and abdominal discomfort in December 2017. *See id.* He sent a kite to the food service supervisor asking for a copy of the ODRC policy for portion sizes but his request was denied. *Id.*

Plaintiff alleges that OSP adopted the ODRC food tray delivery system on December 20, 2017. *Id.* He states the portions were still reduced from that which he received at other institutions. *Id.* He suggests perhaps this is an attempt to reduce food costs or to increase commissary sales. *Id.* He indicates he continued to lose approximately one and half pounds per week. *Id.*

In January 2018, Plaintiff complained he was experiencing chest pain, saw dark spots and felt light-headed. *Id.* He requested emergency treatment. *Id.* Plaintiff states Nurse Doe 1 met with him and reviewed his vital signs and questioned him about his weight loss and diet. He states she failed to provide him the proper diagnosis or treatment. *Id.* at PageID#: 34. Plaintiff states he filed an Informal Complaint to Bebee concerning the portion sizes on meal trays. *Id.* He indicates he was interviewed by Wolfe on February 6, 2018. *Id.* He states Wolfe characterized his grievance in such a way that it made him appear to be unreliable. *Id.*

Plaintiff reported chest pains, dizziness and dark spots on April 12, 2018. *Id.* Nurse Doe 2 treated him on this occasion, and ordered blood tests, stool samples, x-rays, electrocardiogram, and physical examination. *Id.* He contends she advised him to seek help from the mental health

2

(4:18cv1493)

department. *Id.* He claims she did not order dietary supplements or other treatments for malnutrition. *Id.* Plaintiff indicates he had an appointment with Dr. Doe on April 25, 2018. *Id.* Dr. Doe diagnosed him with dehydration rather than malnutrition. *Id.* Plaintiff alleges that Dr. Doe did not provide him with appropriate treatment. *Id.*

Plaintiff indicates he awoke on September 1, 2018, feeling weak and dizzy. ECF No. 5 at PageID#: 40. He ate breakfast and then began to experience abdominal pain that increased in intensity and was accompanied by vomiting. *Id.* He states he pressed his emergency medical call button several times but his calls were ignored. *Id.* An hour later, prison personnel responded and moved him to a holding cell. *Id.* at PageID#: 40-41. There, his symptoms worsened. *Id.* at PageID#: 41. When medical staff arrived, the nurse requested he be brought to the infirmary in wheelchair. *Id.* Plaintiff contends Lieutenant Doe denied the request, and ordered Plaintiff to be shackled and dragged if necessary to the first floor infirmary. *Id.* John Doe Officers 2 and 3 complied with the order; however, instead of taking him to the infirmary, they took him to a suicide watch cell. *Id.* Plaintiff's symptoms continued to intensify and Plaintiff was taken to St. Elizabeth Hospital. *Id.* He contends the staff at St. Elizabeth's hospital were rude and disrespectful to him. *Id.* He contends Dr. Doe ordered Nurse Does 1 and 2 to intubate him. *Id.* He claims this was a painful experience. *Id.* An MRI showed he had an obstruction in his small intestine caused by scar tissue. *Id.* at PageID#: 41-42. He claims Dr. Doe 4 discharged him from the hospital on September 5, 2018 without removing the scar tissue or adequately determining the obstruction had abated. *Id.* at PageID#: 42.

Plaintiff alleges that upon his return from the hospital, he was again placed in a suicide

3

(4:18cv1493)

watch cell by Corrections Officers John Does 6 and 7. *Id.* He indicates he never threatened or attempted to commit suicide prior to this placement in that cell. *Id.* at PageID#: 43. He was ordered to strip by Corrections Officers John Does 5, 6, and 7. *Id.* at PageID#: 53-54. He initially refused and these officers threatened to use mace if he continued to disobey a direct order. *Id.* at PageID#: 54. He complied and was placed in suicide watch for three days before being returned to his cell. *Id.* at PageID#: 43. He claims that, during that time, he was not able to eat or sleep. *Id.*

## II. Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough fact to

4

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), further explains the "plausibility" requirement, stating that " a claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[T]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. Law and Analysis

As an initial matter, Plaintiff names Defendants who are either immune from suit for damages or who are not subject to suit under 42 U.S.C. § 1983. First, he names the ODRC as a Defendant. The Eleventh Amendment is an absolute bar to the imposition of liability upon state agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985). Plaintiff's claims against the ODRC are dismissed.

(4:18cv1493)

In addition, to sustain a cause of action against a Defendant under 42 U.S.C. § 1983, the Defendant must be a state or local government entity or official. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). St. Elizabeth Hospital in Youngstown is a private entity, not a state or local government agency. Similarly, the Nurses and Doctors employed by St. Elizabeth's Hospital are private parties, not government officials. Plaintiff does not allege any facts to suggest these Defendants would qualify as state actors for purposes of § 1983. Plaintiff's claims against St. Elizabeth's Hospital, St. Elizabeth Hospital Nurses John/Jane Does 1 and 2, and St. Elizabeth Doctors John/Jane Doe 1-7 are dismissed.

Plaintiff's claims against the remaining Defendants are asserted as violations of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment protects inmates by requiring that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.' " *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, s*ee Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 405 (6th

6

(4:18cv1493)

Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but it does not address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

To state a claim under the Eighth Amendment, Plaintiff must first plead facts that, if true, establish that a sufficiently serious deprivation has occurred. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

**A. Denial of Grievance Petitions**

Plaintiff's claim against Institution Inspector Wolfe pertains to Wolfe's denial of Plaintiff's grievances. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to give rise to liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999); *see Martin v. Harvey*, Case No. 00-1439, 2001 WL 669983, at *2 (6th Cir. June 7, 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Plaintiff does not allege facts to suggest Wolfe was deliberately

7

(4:18cv1493)

indifferent to his health or well-being.

### B. Inadequate Food Portions

Plaintiff alleges that his food portions are too small and that they have been systematically reduced, causing him serious physical harm. ECF No. 5 at PageID#: 39. He states that, on his initial arrival at OSP in November 2017, his weight was recorded at 200 pounds. *Id.* at PageID#: 38. By April 16, 2018, after a period of suffering "attacks of lightheadedness, dizziness, chest pain, stomach pain, and weakness," he says, he had lost six pounds. *Id.* at PageID#: 39. By September 2018, Plaintiff alleges, he was measured as weighing 182 pounds, a total loss of 18 pounds in less than one year of incarceration. *Id.* at PageID#: 41.

Along with dizziness, weakness, and weight loss, Plaintiff repeatedly alleges that he suffered "abdominal pain that subsequently grew into a debilitating stomach pain and projectile vomiting," *see id.* at PageID#: 40. Although in his pleadings he generally associates his symptoms with inadequate food portions, he acknowledges that an MRI exam in September 2018 "revealed that he was suffering from an obstruction in his small intestine." *Id.* at PageID#: 41. He also acknowledges that he was told by medical staff that "the cause of the obstruction was scar tissue from a previous injury." *Id.* Plaintiff apparently did not dispute that diagnosis with the medical staff, nor does he dispute it in his pleadings.

Plaintiff himself supplies the most obvious explanation for his malady. If Plaintiff is suffering dizziness, weakness, chest pain, stomach pain, and weight loss,[1] an obstruction in his small intestine, not malnutrition, is the likely culprit. Of course, "a well-pleaded complaint may

---

[1] The Court accepts these allegations as true at this stage.

8

(4:18cv1493)

proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. 544, 556 (2007). Nevertheless, a plaintiff does not satisfy the pleading standard of Fed. R. Civ. P. 8(a) merely by alleging facts that are consistent with his preferred legal conclusion. Rule 8 requires plaintiffs to "nudge[] their claims across the line from conceivable to plausible," lest those claims be dismissed out of hand.

*Twombly*'s lesson is especially applicable in cases where there are two or more discrete, conceivable explanations for a plaintiff's alleged conclusion. The plaintiffs in *Twombly* alleged that the defendants had engaged in a conspiracy in restraint of trade, a violation of Section 1 of the Sherman Act. They alleged in their pleadings that the defendants' apparent unwillingness "to enter each other's service territories in any significant way" was "strongly suggestive of conspiracy." 550 U.S. at 567. Accepting the factual allegations as true, the Court dismissed the case because "sparse competition among large firms dominating separate geographical segments of the market could very well signify illegal agreement, but here we have an obvious alternative explanation." *Id.* "[A] natural explanation for the noncompetition alleged is that the [defendants] were sitting tight, expecting their neighbors to do the same thing," thus not engaging in any unlawful behavior at all. *Id.* at 568. The Court acknowledged that the plaintiffs' preferred explanation was "conceivable," but their pleadings contained no factual allegations to make it "plausible." *Id.* at 570. Factual allegations do not plausibly imply a given legal conclusion merely by virtue of being compatible with that conclusion, particularly when the conclusion is better explained by another, more likely cause. *See id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (characterizing *Twombly*'s holding).

9

(4:18cv1493)

In the instant case, Plaintiff acknowledges that he suffered from an obstruction in his small intestine caused by scar tissue from a prior injury, unrelated to his alleged malnutrition. ECF No. 5 at PageID#: 40-41. He alleges that his symptoms were caused by inadequate food portions, but he identifies the "obvious alternative explanation," *see* Twombly, 550 U.S. at 567, in his own pleadings. He advances no factual allegations to support the conclusion that inadequate food portions, as opposed to the scar-tissue obstruction in his small intestine, caused his lightheadedness, dizziness, weakness, stomach pain, and weight loss.

Even if it is plausible that malnutrition *aggravated* his symptoms (rather than having solely caused them), Plaintiff still fails to state a claim under the Eighth Amendment on which relief can be granted. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. Whitley, 475 U.S. at 319. Liability cannot be predicated solely on negligence. Id. Plaintiff pleads no factual allegationss that, taken as true, establish Defendants' wantonness or cruelty with respect to his food portions. In fact, far from wantonness or cruelty, Plaintiff describes the small food sizes as "possibly . . . a cost-saving tool and/or to increase the OSP commissary bottom line." ECF No. 4 at PageID#: 33.

Plaintiff's food-related Eighth-Amendment allegation is not plausible under *Twombly* and *Iqbal*. Plaintiff's allegations of constitutional violations for inadequate food provision are, therefore, dismissed. Food Service Supervisor Doe is accordingly dismissed as a party.

**C. Deliberate Indifference to Serious Medical Needs**

Plaintiff also names OSP Nurse Does 1 and 2 and OSP Doctor John Doe as Defendants. ECF No. 4 at PageID#: 31. He alleges that OSP Nurse Does 1 and 2 and OSP Doctor John Doe

10

(4:18cv1493)

were deliberately indifferent to his serious medical needs when, after asking about his diet, conducting an electrocardiogram, and taking blood and urine samples, they declined to provide medical treatment for his alleged malnutrition. ECF No. 4 at PageID#: 34.

As discussed above, Plaintiff does not plausibly allege that he suffered from malnutrition (as opposed to some other illness) in the first place. More fundamentally, he fails to allege facts that establish OSP Nurse Does 1 and 2 and OSP Doctor Doe acted with a culpable state of mind. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley*, 475 U.S. at 319. Liability cannot be predicated solely on negligence. *Id.* Because he does not plausibly allege facts that satisfy the requirements of an Eighth-Amendment claim against OSP Nurse Does 1 and 2 and OSP Doctor Doe, those Defendants are dismissed.

According to Plaintiff's initial Complaint, Deputy Warden of Special Operations Bebee was "tasked with overseeing food service, commissary, and medical services." ECF No. 4 at PageID#: 32. Because Plaintiff's claims relating to inadequate food and inadequate medical care have been dismissed, Deputy Warden Bebee is also dismissed as a party.

**D. Other Deliberate Indifference and Excessive Force**

Plaintiff's remaining allegations are lodged against unnamed prison officials, and they assert deliberate indifference to serious medical needs and excessive force. *See* ECF No. 5 at PageID#: 43-45.

Plaintiff alleges that, on September 1, 2018, C/O Doe 1 (also identified as "Officer Doe") "failed to monitor and/or respond to [Plaintiff's] repeated attempts to summon emergency medical assistance." *Id.* at PageID#: 43. He alleges that, once attended to, Lt. Doe "denied

11

(4:18cv1493)

[Plaintiff] the use of a wheel chair against medical advice and subsequently ordered him dragged from the fourth floor to the first floor infirmary."[2] *Id.* at PageID#: 44. He alleges that C/O Does 2 and 3 "shackled" and "dragged" him to a suicide-watch cell. *Id.* at PageID#: 44-45. Each of those actions, Plaintiff claims, constituted cruel and unusual punishment based on deliberate indifference because they "unnecessarily delay[ed] [Plaintiff] from receiving emergency medical assistance." *Id.* at PageID#: 43-45. He also alleges that the dragging constituted excessive force. *Id.* at PageID#: 44.

Plaintiff states that he was transported to a hospital the same day. *Id.* at PageID#: 45. He alleges that, once there, C/O Doe 4 acted "in concert" with two hospital nurses by pushing his head forward while the nurses tried to intubate him. He states that C/O Doe 4 used excessive force when he "acted maliciously and sadistically for the purpose of causing [Plaintiff] harm." *Id.* at PageID#: 49.

Apart from conclusory assurances, however, Plaintiff does not provide facts to support the notion that C/O Doe 4's action was "wanton," designed to inflict pain for the sake of inflicting pain. *See Whitley,* 475 U.S. at 319. Plaintiff acknowledges that C/O Doe 4 only got involved, seemingly at the nurses' request, after the first attempt to intubate Plaintiff was unsuccessful. ECF No. 5 at PageID#: 46. Even if the nurses' methods were medically inappropriate, and even if it was inappropriate for C/O Doe 4 to get involved in that procedure, Plaintiff fails to plausibly allege that C/O Doe 4 acted with a culpable state of mind. Eighth-

---

[2] In another portion of his Amended Complaint, however, he suggests that Lt. Doe did not strictly require the prison officials to drag Plaintiff, but rather to "shackle [Plaintiff] and 'if necessary, drag' him" to the infirmary. ECF No. 5 at PageID#: 41.

12

(4:18cv1493)

Amendment liability cannot be predicated on negligence. *Whitley*, 475 U.S. at 319. C/O Doe 4 is therefore dismissed as a party.

Plaintiff alleges that he was transported back to Ohio State Penitentiary on September 5, 2018, where C/O Doe 5 ordered him, almost immediately, to "strip naked, don a suicide gown, and submit to involuntary suicide watch." *Id.* at PageID#: 53. Plaintiff asserts that, when he refused the order, C/O Doe 5, together with C/O Does 6 and 7, threatened to use mace to force his compliance. *Id.* at PageID#: 54. He apparently complied. *See id.* He states that C/O Doe 5's order, together with C/O Does 6 and 7's assistance, was cruel and unusual and constituted excessive force because it was "done maliciously and sadistically to humiliate [Plaintiff] and to cause him harm." *Id.* at PageID#: 53-54. Plaintiff states that he had never suggested he was at risk of committing suicide. *Id.* at PageID#: 53.

Plaintiff alleges that he spent the following three days on "suicide watch." *Id.* at PageID#: 43. He alleges that the lights were not turned off and that he was not able to sleep, eat, or shower during that time. *Id.*

With respect to C/O Does 1-3, C/O Does 5-7, and Lt. Doe, Plaintiff plausibly alleges constitutional violations actionable under 42 U.S.C. § 1983.

## IV. Conclusion

Accordingly, Plaintiff's claims against the ODRC, Bebee, Wolfe, Food Service Supervisor Doe, OSP Nurse Does 1 and 2, OSP Doctor John Doe, St. Elizabeth Hospital, St. Elizabeth Hospital Nurses John/Jane Does 1 and 2, and St. Elizabeth Doctors John/Jane Doe 1-7, and C/O Doe 4 are dismissed pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to

13

(4:18cv1493)

28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

The only remaining Defendants are, as yet, unidentified. Litigation cannot go forward without at least one identified Defendant. Plaintiff shall identify C/O Does 1-3, C/O Does 5-7, and Lt. Doe, and move to amend his Complaint accordingly, no later than 30 days from the date of this Order. If none of the remaining Defendants is identified on or before that date, this action will be dismissed without prejudice.

IT IS SO ORDERED.

 December 19, 2018             */s/ Benita Y. Pearson*
Date                          Benita Y. Pearson
                                 United States District Judge