PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| THEODORE W. SMITH, III, | ) | |
|---|---|---|
| | ) | CASE NO. 4:18cv1493 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| OHIO DEPARTMENT OF | ) | |
| REHABILITATION AND CORRECTION, | ) | |
| *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF Nos. 19, 20] |

This § 1983 action has twice undergone initial-screening scrutiny pursuant to 28 U.S.C. § 1915(e)(2) (ECF Nos. 9, 12), and the Court has denied one motion to amend the Complaint (ECF No. 16).[1] Defendants Lt. Drummond and Mental Health Department Director King ("Defendants") have appeared, and they move the Court to dismiss the complaint for failure to state a claim on which relief can be granted. ECF No. 19. Despite ample time to do so, Plaintiff has not filed an opposition. The Court has been advised, having reviewed Defendants' brief, the pleadings, and the applicable law. For the reasons stated herein, the motion to dismiss is granted.

Plaintiff also moves for default judgment against Defendants. ECF No. 20. Defendants oppose default judgment. ECF No. 21. Because Defendants appeared within 21 days of service

---

[1] Plaintiff is incarcerated at Ohio State Penitentiary, scheduled to be released in October 2024. https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A588608 (last visited May 9, 2019).

(4:18cv1493)

of the Complaint, *see* ECF Nos. 18, 19, Plaintiff's motion for default judgment is denied. *See* Fed. R. Civ. P. 12.

## I. Background

Relevant factual background is discussed in an earlier Order and restated here:

Plaintiff alleges that, on September 1, 2018, he began to experience excruciating pain in his abdomen and tried to summon emergency assistance through the inmate medical assistance call system. *See* ECF No. 11 at PageID#: 96; ECF No. 5 at PageID#: 40-41. He alleges that C/O Doe 1 "failed to monitor and/or respond to [his] repeated attempts to summon emergency medical assistance." ECF No. 11 at PageID#: 96. He alleges that he was finally addressed one hour after his pain began. ECF No. 5 at PageID#: 41. The prolonged, willful ignorance of his calls for help, he alleges, amounted to deliberate indifference of his serious medical need and a violation of the Eighth Amendment. ECF No. 11 at PageID#: 96. Though he reiterated these allegations in his Second Amended Complaint, he has still failed to identify C/O Doe 1. *See* ECF No. 11.

Plaintiff also alleges that, when he was addressed by medical staff, the nurse requested he be taken in a wheelchair to the first floor infirmary. ECF No. 5 at PageID#: 41. He alleges that, rather than use a wheelchair, C/O Does 2 and 3 followed orders from a superior officer to shackle him and, "if necessary, drag" him from the fourth floor to the first floor infirmary (in his dizzy, weak, pained state). *Id.* He alleges that C/O Does 2 and 3 proceeded to drag him to the first floor, but rather than take him to the infirmary as suggested by the nurse and the superior officer, C/O Does 2 and 3 instead took him to a "suicide/strap-down cell" on the first floor. *Id.* He alleges that the denial of a wheelchair, shackling, dragging, and subsequent strapping down, as well as their taking him to a cell rather than to the infirmary, amounted to deliberate indifference of a serious medical need, cruel and unusual punishment, and excessive force. ECF No. 11 at PageID#: 96-97. Since his earlier pleading, Plaintiff has identified the superior officer as "Lt. Drummond." *Id.* at PageID#: 96.

Plaintiff says he was subsequently transported to the hospital in an Emergency Medical Transport and stayed in the hospital for several days. ECF No. 5 at PageID#: 41-42. Allegations arising from events that occurred during that time period have been dismissed. *See* ECF No. 9.

Plaintiff alleges he returned to OSP on September 5, 2018, and was immediately confronted by C/O Doe 5, who forced Plaintiff to strip naked, don a suicide gown,

2

(4:18cv1493)

and submit to involuntary "suicide watch" until further notice. *See* ECF No. 11 at PageID#: 98; ECF No. 5 at PageID#: 42-43. Plaintiff alleges that the prison mental health director was well aware that Plaintiff had never expressed suicidal thoughts, nor had he ever requested assistance of mental health services or suffered any mental illness, but that the mental health director nevertheless ordered C/O Doe 5 to demand Plaintiff's submission to suicide watch purely out of cruelty. ECF No. 5 at PageID#: 52-53. Since his earlier pleading, Plaintiff has identified the mental health director as "Mental Health Department Director King." ECF No. 11 at PageID#: 97.

Plaintiff alleges that, when he initially refused to strip, don a suicide gown, and submit to suicide watch, C/O Does 6 and 7, in concert with C/O Doe 5 and the mental health director, threatened to spray him with mace, forcibly remove his clothes, and force him to submit to suicide watch. *See* ECF No. 11 at PageID#: 99; ECF No. 5 at PageID#: 53-54. Plaintiff states that he was kept on involuntary suicide watch for three days, during which time the lights were not turned off, he did not eat, and he was not allowed to take a shower or communicate with "the outside world." *Id.* at PageID#: 43.

Plaintiff alleges that the actions of Mental Health Department Director King, as well as those of C/O Does 5-7, were taken "maliciously and sadistically to humiliate [Plaintiff] and cause him harm." ECF No. 11 at PageID#: 98. He says that their actions amounted to excessive force and cruel and unusual punishment and, therefore, violated the Eighth Amendment. *Id.*

ECF No. 12 at PageID#: 102-04.

The allegations of excessive force and deliberate indifference against Lt. Drummond were allowed to proceed. ECF No. 12 at PageID#: 105-06. The allegation of excessive force against Director King was also allowed to proceed. *Id.* at PageID#: 106. Defendants Drummond and King now challenge the legal sufficiency of the allegations against them. ECF No. 19.

**II. Legal Standard (Motion to Dismiss)**

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A

(4:18cv1493)

cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted). "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged  but it has not 'show[n]'  'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th

(4:18cv1493)

Cir. 2012) (citations and internal quotation marks omitted).

### III. Law and Analysis

On a motion to dismiss under Rule 12(b)(6), the Court considers the allegations within the four corners of Plaintiff's complaint; it does not consider evidence in the record. The Court's review is no broader or narrower on a Rule 12(b)(6) motion to dismiss than it is on initial screening pursuant to 28 U.S.C. § 1915(e)(2). Nevertheless, the Court benefits from the parties' briefing, and it may therefore reach a different conclusion on motion than on initial screening.

**A. Claims Against Lt. Drummond**

Plaintiff alleges that Lt. Drummond is liable for excessive force and deliberate indifference in violation of the Eighth Amendment because she[2] ordered Plaintiff shackled and dragged from the fourth floor to the first floor despite a nurse's instruction that Plaintiff be brought downstairs in a wheelchair. Lt. Drummond argues that she cannot be held liable under § 1983 because, even if her subordinate officers used excessive force or were deliberately indifferent to Plaintiff's serious medical need by dragging Plaintiff down the stairs, they did not do so on her order, and a defendant cannot be held liable under § 1983 on a theory of *respondeat superior*. ECF No. 19 at PageID#: 172-74. She also argues that Plaintiff fails to allege that Lt. Drummond was made aware of the nurse's wheelchair instruction. *Id.* at PageID#: 173. Finally, she argues that Plaintiff cannot sustain a claim of an Eighth-Amendment violation because he fails to allege any physical injuries resulting from being denied the use of a wheelchair, then

---

[2] Plaintiff's pleadings are unclear about whether Lt. Drummond is male or female. The Court uses female pronouns in this Order to match the language used in Defendants' motion to dismiss (ECF No. 19).

(4:18cv1493)

shackled and dragged to the first floor of the prison facility. *Id.* at PageID#: 174-78.

Lt. Drummond is correct that § 1983 liability cannot be predicated on a theory of *respondeat superior*, or the mere authority to control subordinate officers. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") It is not the case, however, that § 1983 excludes from its scope any allegations of *supervisory liability*. "[A] mere failure to act will not suffice to establish supervisory liability under § 1983," but a plaintiff can state a claim for supervisory liability if he plausibly alleges that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002).

Lt. Drummond argues that, even accepting the pleadings as true, she did not explicitly instruct her subordinate officers to handcuff Plaintiff, deny him the use of a wheelchair, and drag him to the first floor despite his weak and suffering condition. Rather, she emphasizes, the pleadings allege that she told the officers only to "drag [Plaintiff], if necessary," to the first floor. ECF No. 19 at PageID#: 173 ("[W]hether or not it was necessary to drag Plaintiff to the first floor infirmary was clearly left to the unidentified officers' discretion and was not the result of Defendant Drummond's actions."). Lt. Drummond also argues that the pleadings fail to allege that she was individually aware of the nurse's instruction to move Plaintiff in a wheelchair. *Id.*

The Court reads the pleadings differently. Even if Lt. Drummond conditioned her

6

(4:18cv1493)

dragging instruction with the words "if necessary," she nevertheless "authorized, approved, or knowingly acquiesced" in the officers' physical dragging Plaintiff from the fourth floor to the first[3] while he was enduring a life-threatening illness, which Plaintiff plausibly alleges was unnecessary, malicious, sadistic, and deliberately indifferent to his serious medical need. ECF No. 11 at PageID#: 96-97. The Court also declines to credit Lt. Drummond's suggestion that, taking the pleadings as true, she was unaware of the nurse's instruction that Plaintiff be transported by wheelchair. The Second Amended Complaint reads, "When medical staff arrived . . . [t]he nurse requested that [Plaintiff] be put in a wheelchair and taken to the first floor infirmary. Lt. Drummond, against medical advice, denied Mr. Smith the use of a wheelchair." *Id.* at PageID#: 93.

Plaintiff plausibly alleges that Lt. Drummond authorized, approved, or knowingly acquiesced in the denial of a medically necessary wheelchair and subsequent dragging from the fourth floor to the first.

Lt. Drummond argues, however, that Plaintiff's claims are precluded by statute because the pleadings fail to allege any physical injury directly resulting from the alleged unconstitutional behavior. Pursuant to 42 U.S.C. § 1997e(e), a prison inmate may not bring a § 1983 action "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." The alleged physical injury "need not be significant,

---

[3] Lt. Drummond asserts that the pleadings never make clear whether Plaintiff was eventually dragged at all. ECF No. 19 at PageID#: 176. Plaintiff does so clarify, however. ECF No. 11 at PageID#: 97 ("C/O John Doe 2 . . . acting in concert with C/O John Doe 3 dragged [Plaintiff] from the fourth floor to the first floor . . . ."). Whether or not his allegations are borne out by the evidence, Plaintiff expressly alleges that he was dragged from the fourth floor to the first.

7

(4:18cv1493)

[but] it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010).

The pleadings speak at length about Plaintiff's "dizziness and weakness, abdominal pain and projectile vomiting" owing to the "obstruction in his lower intestines." *See, e.g.*, ECF No. 11 at PageID#: 93. Plaintiff also alleges that the disorderly dragging from the fourth floor to the first "unnecessarily delayed Mr. Smith from receiving the life saving emergency medical assistance his illness necessitated." *Id.* at PageID#: 96-97. He did receive medical treatment, however, and the pleadings fail to assign any particular physical injury that resulted from the denial of a wheelchair and subsequent dragging, rather than from the illness he contracted independently of that event. A prison inmate cannot recover under § 1983 for psychological or emotional injury, nor for events that might have led to an increased risk of physical injury, without an attendant allegation of actual physical injury. 42 U.S.C. § 1997e(e).

Because Plaintiff fails to allege a physical injury resulting from his denial of a wheelchair and subsequent dragging to the first floor, his claims of excessive force and deliberate indifference against Lt. Drummond must be dismissed.

**B. Claims Against Mental Health Department Director King**

Mental Health Department Director King insists that "[t]here is no Section 1983 liability for placing a prisoner on suicide watch." ECF No. 19 at PageID#: 169. The conditions of suicide watch, he posits, simply cannot rise to the level of unconstitutional excessive force as a matter of law, no matter the specific circumstances of the suicide-watch detention, the length of time spent there, or the motives of the officers in placing an inmate there. *Id.* at PageID#: 169-

8

(4:18cv1493)

72. Director King cites a number of district-court cases in support of his proposition. *See id.*

Director King's rigid interpretation of the Eighth Amendment is not borne out by governing case law. When a plaintiff alleges excessive physical force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)); *see id.* at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."). "To determine the good faith of the alleged assailant, the court should consider the reasons or motivation for the conduct, the type and excessiveness of the force used, and the extent of the inflicted injury." *Brown v. Perez*, 2017 WL 3378994, at *2 (6th Cir. Apr. 17, 2017) (citing *Hudson*, 503 U.S. at 7).

The Court has an obligation to consider the specific factual circumstances of an Eighth-Amendment excessive-force allegation. There is no bright-line rule of constitutional law stating that prison suicide-watch conditions are always exempt from excessive-force allegations.

In this case, Plaintiff plausibly alleges that Director King "was well aware that [Plaintiff] had never articulated a desire nor intent to commit suicide. Further, Dr. King was allegedly also aware that, in the ten years prior to Mr. Smith's incarceration at OSP, [Plaintiff] had never requested the assistance of any . . . mental health services." ECF No. 11 at PageID#: 94. Taken as true, Plaintiff's allegations suggest that Director King's suicide-watch order and attendant physical force were a pretext allowing Director King and his subordinates to "maliciously and sadistically use force to cause harm." *Hudson*, 503 U.S. at 6-7.

(4:18cv1493)

As explained above, however, Plaintiff has another hurdle to clear. Pursuant to 42 U.S.C. § 1997e(e), a prison inmate may not bring a § 1983 action "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . ." The alleged physical injury "need not be significant, [but] it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory*, 604 F.3d at 254.

Despite the vivid descriptions of his dizzy, weak, pained physical condition at the time he was placed on suicide watch, Plaintiff does not specifically allege any physical injuries that resulted from his placement on suicide watch.[4] His claim, read carefully, alleges humiliation and serious discomfort, but not physical injury. That missing link prevents his claim from proceeding. 42 U.S.C. § 1997e(e); *see Flanory*, 604 F.3d at 254; *McGrew v. Boyd Cty.*, 2013 WL 5214332, at *4 (E.D. Ky. Sept. 17, 2013) ("McGrew's physical injury is less than *de minimis*; it is non-existent. Thus, there exists no predicate for his . . . emotional distress claim.").

Because Plaintiff fails to allege a physical injury resulting from his time in involuntary suicide watch, his claim of excessive force against Mental Health Department Director King must be dismissed.

**IV. Conclusion**

For the reasons stated herein, Plaintiff's motion for default judgment (ECF No. 20) is denied, and Defendants' motion to dismiss for failure to state a claim (ECF No. 19) is granted.

---

[4] A temporary deprivation of hygiene items, by itself, generally does not satisfy the physical injury requirement of an Eighth-Amendment allegation. *Flanory*, 604 F.3d at 254. Plaintiff in this case alleges a temporary deprivation of hygiene items lasting three or four days. ECF No. 11 at PageID#: 97-98.

(4:18cv1493)

All of Plaintiff's claims against named defendants have been dismissed, and his case therefore cannot be sustained. A separate dismissal Order shall issue.

    IT IS SO ORDERED.

|    May 9, 2019    |   */s/ Benita Y. Pearson*   |
|---|---|
| Date | Benita Y. Pearson<br>United States District Judge |